# Campbell County Sheriff's Office

| G.O. number<br>9.0 | Effective Date:<br>1/7/2016 | Issued Date:<br>1/7/2016 |
|---|---|---|
| Subject:<br>Use of Force | Supersedes:<br>All others | Review:<br>Annually |

1. **PURPOSE** This General Order establishes guidelines for

the use of force.

2. **DEFENITIONS**

**Force** - Any degree of physical action, beyond minimal restraint, exerted upon or against a person or thing to compel or constrain action or movement, usually applied through the use of a person's body, weapon, equipment, and/or other objects.

**Deadly force.** - Lethal force - Force exercised through the use of a firearm, or any other means, which is reasonably likely to cause serious physical injury or death.

**Imminent** - Near at hand; on the point of happening.

**Less than lethal force** - Any use of force that is not intended and not likely to cause death or serious bodily injury.

**Reasonable Force** - Force that is lawfully utilized to overcome resistance to arrest, to defend oneself or others from harm, or control a situation; such force being minimal and reasonably necessary, but not excessive or abusive, considering the amount of resistance or level of threat encountered.

**Probable cause** - In reference to the use of deadly force, means facts and circumstances known to the officer that would cause a prudent and cautious person with the knowledge, training, and experience of a police officer to believe that a suspect has committed a crime or that serious physical harm could result from a situation.

**Reasonable belief** - Facts or circumstances the officer knows, or should know, that would cause an ordinary and prudent person to act or think in a similar way under similar circumstances.

**Serious physical injury** -- Critical bodily injury that creates a risk of death, causes serious permanent disfigurement, or results in long-term loss or impairment of any bodily member or organ.

## 3. POLICY

3.1. Use of force directives are for agency use only and do not apply to any criminal or civil proceedings. The agency's policy should not be construed as a creation of higher legal standard of safety or care in an evidentiary sense with respect to third party claims. Violations of this directive will only form the basis for agency administrative sanctions. Violations of law should form the basis for civil and criminal sanctions in a recognized judicial setting

3.2. Officers shall use only the minimum amount of force necessary to control a person or situation, and accomplish lawful objectives. Once resistance is overcome, the exercise of force shall cease unless required to maintain control.

3.3. Force is not to be used as "punishment" or as a coercive tool, once an individual is under control and/or in custody. Force may be used when a suspect shows intention of resistance by word or action and all lesser measures have proven ineffective or appear to be inappropriate. Force shall not be used when a suspect offers no resistance to arrest and obeys lawful commands.

3.4. Generally, the use of hands, feet, and other body parts in the application of force shall be considered less than lethal force. However, any motion, movement, or technique of martial arts known to be deadly shall be considered deadly force. Use of body parts as weapons should be avoided due to the risk to the officer of injury or exposure to infectious disease.

3.5. Use of chemical weapons shall be considered less than lethal force.

3.6. Use of a CEW/ TASER shall be considered as less than lethal force by a CEW/TASER Trained officer following TASER deployment guidelines and shall when feasible Announce his/her intentions of deploying the CEW/ TASER.

3.6.1 If a person is not an immediate threat or flight risk:

- Do not immediately resort to a CEW without first attempting to use negotiation,

CCSO G.O. 102.04

Case 3:20-cv-00233-CEA-JEM    Document 112-2    Filed 10/17/23    Page 2 of 7
PageID #: 602

- commands or physical skills.
- Avoid using a CEW on a person who is actually or perceived to be mentally ill
- Avoid using a CEW on elevated risk population member, unless necessary and justifiable.
- Do not use pain compliance if circumstances dictate that pain is reasonably foreseeably Ineffective (usually due to drug, alcohol, or mental illness cause elevation of pain Tolerance.)

.

3.7. A CEW/TASER shall never be deployed after a chemical weapon has been deployed on a person.

3.7.1 CEW/ TASER - Removal of darts from a person can be performed by officers and/or medical professionals. Gloves should be worn by officers, the dart impact area cleaned with a form of antiseptic and a bandage applied, if removed by the officer. If the darts located in areas as such a person's groin area, face, female's chest and eyes etc. are to be removed by hospital medical personnel only.

3.7.2 CEW/ TASER – Officer(s) shall collect and preserve the spent TASER dart(s), afid dots and spent TASER cartridge(s). The said items will be placed into evidence bag(s) and a biohazard label placed on said evidence bag(s) and attached to a copy of the Use of Force Report and logged into evidence. Photographs shall be taken of the dart impacts on the suspect, when feasible and placed in officer case file.

3.8. Use of a baton shall be considered less than lethal force, unless the weapon is used to strike a blow above the shoulders or to other vital organs, at which time the blow may be considered the use of deadly force.

3.9. Use of a law enforcement canine should be considered a less than lethal force if the canine is trained and certified in suspect apprehension. The Canine should only deployed during the arrest of a person that has committed an aggravated crime, assaultive crime or the person is fleeing, resisting or not complying with the arrest. When feasible the canine officer shall announce his/her presence and a warning about the release of his canine.

3.10. Officers should only apply the Lateral Vascular Neck Restraint (LVNR) which is considered a less than lethal force when all other less than lethal methods have failed or is unavailable. Only officers trained in the technique should attempt to apply it in accordance with TCA 38-8-113.
Note: If officers are not trained in Lateral Vascular Neck Restraint or similar restrain maneuvers. The officer shall not use them unless all other means have been exhausted and deadly force is warranted.

3.11. Anytime force is used and injury is observed or suspected to an officer, bystander, and/or suspect, appropriate medical attention must be made available to the injured parties.

3.12. If injury is observed or suspected, the scene should be secured before administering medical aid. Officers should request assistance from dispatch, and render basic first aid as their training permits.

3.13. Minor injuries require an arrestee to be transported to the nearest hospital by officers or checked by emergency medical professionals.

## 4. LETHAL FORCE

4.1. Officers shall only use lethal force to take control of a suspect under the circumstances set forth in Tennessee Code Annotated 39-11-620 and the United States Supreme Court decision in Tennessee v. Garner, 53 U.S.L.W. 4410.

4.2. Officers may only use deadly force to protect the officer or others from what is reasonably believed to be art imminent threat of death or serious physical injury.

4.3. Officers may use deadly force anytime that the suspect has the means and ability to seriously injure others. The officer does not necessarily have to wait until a firearm is pointed at someone or a shot is fired before using deadly force, as this could greatly increase the risk that the officer or others would be injured or killed.

4.4. When the use of a firearm becomes necessary in the use of deadly force, officers shall shoot at "center body mass" for maximum stopping effectiveness and minimal danger to innocent bystanders. In barricade and/or hostage situations, officers may aim for alternative and/or specific targets. In some cases the suspect(s) may be covered with body armor or rigged with explosives, an alternative target placement would be necessary.

4.5. Officers shall not discharge firearms for the purpose of firing a warning shot.

4.6. Officers shall not discharge a firearm into or from a moving vehicle, except when all other reasonable means have been exhausted. It is necessary for the defense of the officer's life or the life of another person, or the officer has reasonable cause to believe that the suspect poses a significant threat of death or serious physical harm to the officer or others.

4.7. Officers must be aware of their field of fire and shall not create a substantial risk to innocent persons when discharging firearms.

4.8. When possible, the officer shall identify himself/herself as an officer and orally order the defendant to halt and/or cease aggressive action or deadly force may be used. in defense of human life. Such defense shall include the officer's own life or that of any other person in threat of serious physical injury or death. All other reasonable means shall be exhausted or not feasible. Generally, no distinction shall be made relative to the age, race, sex, or creed *of* the intended target. Self-defense and defense of others shall be the only policy guideline for employing deadly force.

4.9. Officers should only apply the Lateral Vascular Neck Restraint (LVNR) which is considered a less than lethal force when all other less than lethal methods have failed or is unavailable. Only officers trained in the technique should attempt to apply it in accordance with TCA 38-8-113.
Note: If officers are not trained in Lateral Vascular Neck Restraint or similar restrain maneuvers. The officer shall not use them unless all other means have been exhausted and deadly force is warranted.

## 5. FLEEING FELONS

Officers may use deadly force to affect the arrest or prevent the escape of an apparently unarmed felony suspect only if:

5.1. The officer has personal knowledge of a set of facts that he/she can articulate and that are sufficient to constitute probable cause to believe that the suspect will imminently cause death or serious physical injury to the officer or others unless he is immediately apprehended.

5.2. The officer has probable cause to believe the defendant has committed a felony involving the infliction or has threatened the infliction of serious physical harm to the officer or to any other person.

5.3. All other reasonable means of apprehension have been exhausted; an if feasible, a warning has been given to the defendant by identifying himself/herself as an officer and by giving an oral order to halt or deadly force might be used.

## 6. REPORTING

6.1. A written report shall he submitted to supervisors whenever an officer, whether on duty or off duty:

6.1.1. Discharges a firearm for any reason other than training, practice, or recreation

6.1.2. Takes an action that results in or is alleged to have resulted in injury or death of a person.

6.1.3. Applies force through the use of any weapon.

6.1.4. Uses weaponless force that could result in injury (i.e. punches, kicks, etc.)

6.2. Reports on the use of force shall be completed and turned in to supervisors by the end of the working shift. Reports on resulting injuries or deaths shall he turned in with the use of force report.

6.3. Supervisors shall forward reports on the use of force through the chain-of-command.

6.4. The Captain shall be responsible for reviewing use of force incidents and shall maintain files of the use of force reports.

6.5. The Captain shall annually prepare an analysis from reports on the use of force (administration side only, excludes corrections) to determine if trends exist that may indicate a need for retraining of specific personnel, policy or procedural revision, or development of new techniques or equipment. The analysis shall be submitted to the Sheriff.

## RELIEF FROM DUTY

7.1. When an officer's use of force or actions results in death or serious physical injury to any person, the officer shall be assigned to administrative leave or administrative duty away from field assignments.

7.2. The Sheriff shall place an officer on administrative leave or administrative duty for a period of at least 2 week.

7.3. Such relief from regular duty shall not he considered a suspension or disciplinary action. The purpose is an administrative decision and course of action that:

7.3.1 At the request of the 8th Judicial District Attorney General the Tennessee Bureau of Investigation conducts an objective investigation into the incident. Relieves the officer from regular duties and public exposure, while undergoing any possible incident-related stress. Protects the officer from public confrontation. Assures the public that officers who may have exceeded the scope of their authority will receive additional training or other action as necessary.

## 8. COUNSELING

8.1. Any personnel involved in any incident that results in a death through the use of force shall be required to attend a debriefing by a CISD team and may be required to attend counseling sessions with a professional counselor provided by the agency.

8.2. All personnel, involved in any incident through the use of force that results in a serious injury, may also be required to attend debriefings and counseling as necessary.

8.3. The number and frequency of sessions to be paid for by the agency shall be determined after consultation with the counselor or any other physicians or staff, as needed.

8.4. Follow-up visits may be required as directed by the attending mental health provider in order to deal with any long-term effects of such an incident.

Approved by: Sheriff Robbie K. Goins             1/7/2015