IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| NATHAN LING, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No.: 3:20-cv-00233 |
| CAMPBELL COUNTY, TENNESSEE, et al., | ) Judge Atchley |
| Defendants. | ) Magistrate Judge McCook |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF FACTS

Comes now the Plaintiff, by and through counsel, and hereby responds to Defendants' Statement of Facts as follows:

1. In the early morning hours of June 2, 2019, deputies from the Campbell County Sheriff's Department were dispatched to 408 Wildwood Cir. in LaFollette, Tennessee after a resident called 911 to report a suspicious vehicle occupied by Kaitlyn McDaniel, Nathan Ling, and Jaevon Jones. (Second Amended Complaint, ¶12, 13)

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed. It is disputed that this is a material fact.**

2. Deputies Cody Douglass and John Minor responded to the residence first, and discovered the vehicle, a red Ford Focus. (Douglas Dep., p. 25-28)

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed. It is disputed that this is a material fact.**

1

3. Deputy Douglas spoke with Ms. McDaniel and she stated that none of the occupants had money to afford a hotel and therefore they had simply parked their vehicle on another person's property so they could sleep overnight. (Id., at p. 31-34)

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed. It is disputed that this is a material fact.**

4. Deputy Douglas obtained and searched the license plate number, which indicated that the vehicle had been reported stolen from the State of Michigan. (Douglas Dep., p. 27-28, Minor Dep., p. 27-30)

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed. It is disputed that this is a material fact.**

5. Deputy Douglas confronted Ms. McDaniel about what he had found, and she conceded she had stolen the vehicle from her grandparents in Michigan. (Second Amended Complaint, ¶0., 14)

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed. Plaintiff's Amended Complaint ¶ 12 states "Ms. McDaniel admitted to taking the vehicle from her grandparents without their permission." It is disputed that this is a material fact.**

6. Deputy Douglas also checked for outstanding warrants on all of the occupants, and records showed that Plaintiff had an active felony warrant in the State of Michigan. (Second Amended Complaint, ¶15; Douglas Dep., p. 28)

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed. It is disputed that this is a material fact.**

7. As a result, Deputy Minor attempted to take this Plaintiff into custody, but Ling fled on foot. (Second Amended Complaint, ¶16; Minor Dep., p. 34, 35, 42-43)

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed. It is disputed that this is a material fact.**

8. Deputies Douglas and Minor pursued Ling into the backyard at 382 Wildwood Circle. (Second Amended Complaint, ¶17; Douglas Dep., p. 29-31; Minor Dep., p. 42-43).

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed. It is disputed that this is a material fact.**

9. Ling was located in the backyard of the residence, unconscious, underneath the rear section of a pickup truck having struck his head on the pickup truck. (Minor Dep., p. 44, 46, Douglas Dep., p. 60).

**RESPONSE:**

**It is disputed that Mr. Ling was located unconscious and underneath the rear section of a pickup truck. It is further disputed that Mr. Ling struck his head on a pickup truck.**

10. Deputy Minor sustained an injury to his arm while pursuing Ling. (Id., at p. 42-43)

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed. It is disputed that this is a material fact.**

3

11. Upon hearing of Minor's injury, deputies Tasha Tackett, Justin Crabtree, Michael Owens, and Dakota Williams responded to the residence. (Second Amended Complaint, ¶11)

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed. It is disputed that this is a material fact.**

12. Ling was, of course, arrested. (Second Amended Complaint, ¶20, 21)

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed. It is disputed that this is a material fact.**

13. No dispute exists that Ling heavily resisted his arrest at scene. (Owens Dep., p. 31-34, 37-38, 40); Douglas Dep., p. 27-34, 37, 40-41; Williams Dep. p. 24; Minor Dep., p. 27-30, 34-42-43, 48-50).

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, it is undisputed that the plaintiff somewhat resisted arrest; however, the defendants' characterization that the plaintiff "heavily resisted his arrest" is disputed. It is further disputed that this is a material fact.**

14. No one abused Ling at scene (Ling Dep., p. 52; Williams Dep., p. 31; Owens Dep., p. 35-36, 40; Minor Dep., p. 56; Douglas Dep., p. 54, 56, 60).

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed; however, during the trial of this matter, it will be shown that Mr. Ling was seriously abused. It is disputed that this is a material fact.**

15. McDaniel attempted to interfere with the arrest and was detained after a scuffle. (Owens Dep., p. 41).

**RESPONSE:**

**This is disputed. There is no testimony to support this statement, and the citation does not support the allegation that Ms. McDaniel interfered. It is further disputed that this is a material fact.**

16. EMS was contacted and responded to the scene to provide aid to Ling. (Second Amended Complaint, ¶18, 19).

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed. It is disputed that this is a material fact.**

17. Yet, once EMS arrived, Ling became combative and attempted to kick and bite deputies and paramedics. (Complaint, ¶19; Minor Dep., p. 48, 49; Williams Dep., p 24; Douglas Dep., p. 40-41, 53- 64; Owens Dep., p. 32-33, 37-40).

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed. It is disputed that this is a material fact.**

18. EMS was still able to clear Ling to be transported to the jail in Campbell County, Tennessee. (Second Amended Complaint, ¶18, 19).

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed. It is disputed that this is a material fact.**

19. Deputy Crabtree transported Ling. (Williams Dep., p. 27).

**RESPONSE:**

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed. It is disputed that this is a material fact.**

20. Deputy Williams used only a pressure-point technique in striking Ling once in the leg. Deputy Williams explained this strike was done only as a direct result of Ling continuing to kick at, or at least in Deputy Williams' perception, move his legs in a kicking fashion to continue to resist incarceration. (Williams Dep., p. 34, 40).

RESPONSE:

**Partially disputed. It is not disputed that Deputy Williams testified to this; however, it is disputed that Deputy Williams could have reasonably perceived this as "resisting incarceration." As the video evidence shows, Mr. Ling, while in handcuffs, was being actively abused by Justin Crabtree and Corporal Sean Brown. Furthermore, Deputy Williams struck Mr. Ling three times in the back while in the shower area. (Deputy Miller Dep. pp. 46-47).**

21. After Ling was secured, he was taken for decontamination in the shower area of the facility. Ling was accompanied by jailer Joshua Miller, and jailer Alex Standridge (perhaps Brown?). (Miller Dep., p. 46-48; Standridge Dep., p. 43; Williams Dep., p. 44, 46, 62).

RESPONSE:

**For purposes of ruling on this Motion for Summary Judment, this fact is undisputed.**

22. Deputy Williams later entered the area and applied an open hand pressure-point technique to Ling's lower back due to Ling's continued spitting and perceived resistance. (Williams Dep., p. 55, 56, 62).

RESPONSE:

**This is disputed. Although Deputy Williams made this statement during his deposition, Deputy Joshua Miller testified that Mr. Ling was calm, and while Mr. Ling was bent over, Deputy Williams hit him three times in the back. (Williams Dep., p. 46,47; Miller Dep. p. 46-47). It is also disputed that Mr. Ling was spitting or resisting at all. Deputy Miller testified that Corporal Sean Brown ordered the spit mask put back on only because Deputies Miller and Standridge had removed it and**

6

**Corporal Brown did not like that. (Miller Dep. p. 46).**

23. No dispute exists that Ling sustained no injury as a result of either the leg strike or the open hand move to his lower back to facilitate his decontamination. For his part, Standridge saw no strike by Deputy Williams. (Standridge Dep, p. 43).

**RESPONSE:**

**Disputed. Plaintiff agrees that no permanent injury was inflicted by Deputy Williams' actions; however, the actions of Deputy Williams as described by Deputy Miller constitute an ongoing event of continued abuse and torture of Nathan Ling. (Miller Dep. p. 45-48).**

24. Williams was not on scene or present for Crabtree's use of force, nor did he observe Brown's rib strike in search trap. (Williams Dep., p. 40, 41, 43).

**RESPONSE:**

**Disputed in part. Video evidence shows that Deputy Williams was next to Corporal Brown when Brown struck Mr. Ling in the ribs.**

25. Although Joshua Miller claims to have seen Deputy Williams strike Ling in the lower back, he candidly admitted that it was not forceful, and done solely to enable the officers to decontaminate Ling. (Miller Dep., p. 46-48).

**RESPONSE:**

**Disputed. Deputy Miller did not say that the strike was done to enable the officers to decontaminate Ling. Miller stated, "that's when they were like kinda, he was bent over like this, like down trying to keep his head away from them, and he, that's when Dakota had hit him in the lower back. He said get down, and like kinda just done like three hits like that… I don't think it was real forceful." (Miller Dep. 46-47).**

26. Standridge also claims Ling resisted in shower area. (Standridge Dep., at p. 42).

**RESPONSE:**

**It is undisputed that Standridge made this claim.**

27. For his part, Deputy Williams stated the open hand technique was used only to facilitate decontamination and at no time did he did attempt to punish or otherwise attack Ling in any way. (Williams Dep., p. 55-56, 62).

**RESPONSE:**

**While it is undisputed that Deputy Williams made this statement during his deposition, the actions of Deputy Williams as described by Deputy Miller constitute an ongoing event of continued abuse and torture of Nathan Ling. (Miller Dep. p. 45-48).**

28. After the decontamination, Ling was placed in the negative pressure cell. (Williams Dep., p. 63, 64).

**RESPONSE:**

**This fact is undisputed.**

29. Although Standridge claims to have checked on Ling several times during the night (Standridge Dep., p 40), Plaintiff claims that jailer Brown left Ling in the negative pressure cell until the facility nurse arrived at 6:30 a.m. (Id.)

**RESPONSE:**

**Plaintiff disputes the defendants' characterization that only Corporal Brown left Mr. Ling in the cell until 6:30 a.m. All of the jail personnel, including Deputy Williams, left Mr. Ling alone in the negative pressure cell without medical attention until the facility nurse arrived at 6:30 a.m.**

30. No proof exists that Williams "caused" any injury to Ling.

**RESPONSE:**

**Disputed. Plaintiff agrees that no permanent injury was inflicted by Deputy Williams' actions; however, the actions of Deputy Williams as described by Deputy**

**Miller constitute an ongoing event of continued abuse and torture of Nathan Ling. (Miller Dep. p. 45-48). Additionally, Defendant Williams failed to intervene to protect Mr. Ling and the defendant failed to assist the plaintiff in getting medical attention.**

31. Although Plaintiff makes much of Brown's failure to secure Ling any medical care, Plaintiff has failed to present any evidence of injury as a result of the "delay" in having Ling transported to LaFollette Medical Center, and then the University of Tennessee Medical Center. It is, however, without dispute that Deputy Williams had no role in Ling's medical care. (Williams Dep., p. 49, 54, 63, 64).

**RESPONSE:**

**Disputed. An officer such as Defendant Williams is under a duty to attempt to provide access to medical care for injured detainees. The plaintiff was left with several fractrues and a permanent traumatic brain injury for several hours without any medical treatment.**

32. Five videos were provided to Plaintiff as Exhibit D to Defendants' Responses to Request for Production number 17, and are reproduced with this Motion.

**RESPONSE:**

**Undisputed.**

33. According to the Declaration of Matthew Wasson, Campbell County, Tennessee's Policies and Procedures call for only the use of reasonable force. (Wasson Dec., ¶3).

**RESPONSE:**

**This is undisputed.**

34. Moreover, all inmates/detainees are to receive adequate medical care. (Wasson Dec., ¶3).

**RESPONSE:**

**This is undisputed.**

9

35. No facts exist of any custom as defined by Section 1983, and all individuals sued were adequately trained. (Wasson Dec., ¶4).

**RESPONSE:**

**Disputed.**

**The personnel at the Campbell County Sheriff's Department received no training on assessing whether individual inmates or arrestees need to be hospitalized. (Sheriff Goins Dep. pp. 126-127). The personnel at the Campbell County Sheriff's Department received no training to recognize serious medical conditions or needs of inmates. (Chief Deputy Goins Dep. p. 61; Deputy Williams Dep. p. 65). Although new hires were given the policy manual, they were not tested on the manual, and they only had to sign off that they had reviewed it. (Deputy Miller Dep. pp. 15-16). The Sheriff's Department provided no assistance or training with regard to their training manual in excess of 400 pages. (Deputy Crabtree Dep. p. 13). There was no training provided to the correction officers concerning the responsibility to intervene in the event another officer was abusing an inmate or arrestee. (Corporal Brown Dep. p. 69). Corporal Brown was not given any training on how to be a supervisor except for being given a stack of paperwork. (Corporal Brown Dep. p. 20). The Sheriff's Department did not provide any training to new hires on the use of excessive force. (Corporal Brown Dep. p. 29; Deputy Miller Dep. pp. 16-17). The Sheriff's Department did not provide any training on how to handle a combative detainee or a situation similar to the incident involving the plaintiff. (Corporal Brown Dep. pp. 100-101; Deputy Standridge Dep. p. 49).**

**Sheriff Goins admitted that "it look[ed] to be" that a culture of violence existed in the Cambpell County Sheriff's Department towards combative detainees. (Sheriff Goins Dep. p. 138). Deputy Miller testified that a culture existed of not reporting the bad conduct of fellow officers due to the fear of being called a "blue falcon" and a snitch. (Deputy Miller Dep. pp. 53-54). Deputy Miller testified that officers such as Deputy Fox and Corporal Brown "loved having uses of force. Loved it." Deputy Miller further testified that they made a game out of use of force and bragged about being in use of force situations. (Deputy Miller Dep. pp. 73-74).**

**Plaintiff's expert Greg Winston concludes that the lack of training and supervision resulted in a culture of indifference that had been allowed to build and exist in the Campbell County Sheriff's Department. (Winston Affidavit ¶ 9).**

36. Specifically, all were certified either as road deputies by the Tennessee Peace Officer Standards and Training Commission or by the Tennessee Correction Institutes certification

concerning correctional officers. (Wasson Dec., ¶4).

**RESPONSE:**

**Disputed in part. It is not disputed that the officers may have received materials that allowed them to be certified by the TCI; however, the officers testified that they were not trained on use of force, intervention to protect detainees, and providing medical care to detainees. (See Response to Statement No. 35).**

37. Moreover, as with Plaintiff's failure to prove custom, no facts exists of any prior incidents of reasonable force and/or denial of medical care, which may aid Plaintiff in the prosecution of this matter against Campbell County, Tennessee. Indeed, according to the deposition of Mr. Wasson, he has worked at the County for some time, and recalled no like incidents. (Wasson Dep., p 53-56).

**RESPONSE:**

**Partially Disputed. Deputy Miller testified that he witnessed Corporal Brown use excessive force in taking an inmate to the ground despite the inmate not doing anything to warrant it. However, the plaintiff is not required to show multiple past instances to prove an unconstitutional custom.**

Respectfully submitted,

*/s/ Tony Seaton*
Tony Seaton, BPR #7279
Garza Law Firm
118 E. Watauga Ave.
Johnson City, TN 37601
Phone: (423) 282-1041
Fax:  (423) 282-0967
Email: tseaton@garzalaw.com
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of November, 2023, a copy of the foregoing was filed electronically using the Court's ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U. S. Mail. Parties may access this filing through the Court's electronic filing system.

*/s/ Tony Seaton*
Counsel for Plaintiff