# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| NATHAN LING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 3:20-cv-00233 |
| ) | |
| CAMPBELL COUNTY, TENNESSEE, ) | Judge Atchley |
| et al., ) | |
| ) | Magistrate Judge McCook |
| Defendants. ) | |

## PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

Comes now the Plaintiff, by and through counsel, and herby submits that following statement of additional material facts in support of Plaintiff's Response in opposition to Defendants' Motion for Summary Judgment.

1. On the morning of June 2, 2019 Mr. Ling was transported from the Campbell County Correctional Center to the emergency department at LaFollette Medical Center and then airlifted to the University of Tennessee Medical Center where he was diagnosed with a pneumothorax (collapsed lung); orbital fracture (bones surrounding the eye socket); maxillary fracture (bridge between the cranial base and the dental plate); nasal bone fracture; closed fracture of the greater tuberosity of the left humerus (prominent area of bone at the top of the humerus); and traumatic brain injury. (Affidavit of Greg Winston ¶ 5).

2. Campbell County Sheriff's Department provided medical care to inmates only from 6 am until 11 pm. After hours nurses were told to be available "on call". (Sheriff Goins Dep. p. 52; Willoughby, Dep. pp. 18-19).

3. Corporal Sean Brown who was in charge of the Campbell County Jail on the evening of June 2, 2019, stated that when he would call the "on call" nurse the call always went to voicemail so he assumed that the line was not operational. Corporal Brown stated that had happened on at least three occasions before so he did not call the nurse the night about Mr. Ling's condition. (Brown Dep. p. 63-64).

4. The personnel at the Campbell County Sheriff's Department received no training on assessing whether individual inmates or arrestees need to be hospitalized. (Sheriff Goins Dep. pp. 126-127).

5. The personnel at the Campbell County Sheriff's Department received no training to recognize serious medical conditions or needs of inmates. (Chief Deputy Goins Dep. p. 61; Deputy Williams Dep. p. 65).

6. It is the responsibility of the sheriff's department to assess one's medical condition before they incarcerate them, especially if someone is severely injured. (Sheriff Goins Dep. p. 123).

7. Although the new hires were given the policy manual, they were not tested on the manual, and they only had to sign off that they had reviewed it. (Deputy Miller Dep. pp. 15-16).

8. The Sheriff's department of Campbell County provided no assistance or training with regard to their training manual in excess of 400 pages. (Deputy Crabtree Dep. p. 13).

9. There was no training provided to the correction officers in the jail concerning the responsibility to intervene in the event another officer was abusing an inmate or arrestee. (Corporal Brown Dep. p. 69).

10. Deputy Miller testified that a culture existed of not reporting the bad conduct of fellow officers due to the fear of being called a "blue falcon" and a snitch. (Deputy Miller Dep.

pp. 53-54).

11. Deputy Miller testified that officers such as Deputy Fox and Corporal Brown "loved having uses of force. Loved it." Deputy Miller further testified that they made a game out of use of force and bragged about being in use of force situations. (Deputy Miller Dep. pp. 73-74).

12. Every officer had a responsibility to report another officer's abuse of an inmate or arrestee and to report it. (Sheriff Goins Dep. p. 61).

13. The chief deputy under the Sheriff stated that at the time the Campbell County Sheriff's department had training, supervision and culture issues. (Chief Deputy Goins Dep. p. 59).

14. Corporal Sean Brown was not given any training on how to be a supervisor except for being given a stack of paperwork. (Corporal Brown Dep. p. 20).

15. The Sheriff's Department of Campbell County did not provide any training to new hires on the use of excessive force. (Corporal Brown Dep. p. 29; Deputy Miller Dep. pp. 16-17).

16. The Sheriff's Department of Campbell County did not provide any training on how to handle a combative detainee or a situation similar to the incident involving the plaintiff. (Corporal Brown Dep. pp. 100-101; Deputy Standridge Dep. p. 49).

17. Deputy Miller testified that Campbell County had a strict requirement that correctional officers not go around their chain of command. (Deputy Miller Dep. pp. 24-25).

18. Correctional officers were not trained on seeking medical care for injured inmates. Instead, they were trained to report what they observed to their direct supervisors. (Deputy Miller Dep. pp. 24-25).

19. Corporal Brown testified that detainees often were not taken to the hospital even if their "hand swelled up" or "they've lost all mobility in their arm". (Corporal Brown Dep. p. 62).

20. Sheriff Goins admitted that based on the evidence in this case, "it look[ed] to be" that a culture of violence existed in the Cambpell County Sheriff's Department towards combative detainees. (Sheriff Goins Dep. p. 138).

21. After being cleared by EMS personnel, Mr. Ling was handcuffed with his hands behind his back. (Deputy Crabtree Dep. p. 30).

22. Upon arrival at the Campbell County Correctional Center, Deputy Crabtree removed Mr. Ling from the back seat of his cruiser and then threw him aggressively toward the floor of the sally port. (Deputy Crabtree Dep. p. 37).

23. Deputy Crabtree then violently shoved Mr. Ling against the wall and door at the jail's entrance before entering the jail's intake area. (Deputy Crabtree Dep. p. 38).

24. Deputy Crabtree then placed one hand on Mr. Ling's left arm and one behind his neck; positioned Mr. Ling to face the intake counter and window; and then, with intense and overwhelming force, slammed the handcuffed Mr. Ling's head against the counter and metal window frame. (Deputy Crabtree Dep. p. 38; Sheriff Goins Dep. pp. 62-63).

25. Upon the being placed in the control of Deputy Miller and Corporal Brown, Mr. Ling attempted to raise himself up from the intake counter. Deputy Crabtree then assisted Miller and Brown in violently slamming Mr. Ling to the floor of the Campbell County Correction Center's intake room. (Deputy Miller Dep. pp. 65-66).

26. While Mr. Ling was handcuffed and restrained on the floor, Deputy Crabtree proceeded to strike Mr. Ling in the face two times. As a result of these blows, Mr. Ling's nose

began to gush blood profusely onto the floor. (Deputy Crabtree Dep. pp. 40-42).

27. Correction officers Miller and Brown and Deputy Dakota Williams then joined in with Deputy Crabtree in keeping Mr. Ling pinned against the floor. (Deputy Miller Dep. p. 31).

28. Officer Brown and Deputy Williams engaged in the continuing and unnecessary assault of the restrained Mr. Ling as he lay helpless on the floor. (Deputy Williams Dep. p. 34, 40-41).

29. A spit mask was then placed over Mr. Ling's head and while he was still laying on the floor of the Campbell County Correction Center's intake room. (Corporal Brown Dep. p. 80).

30. Deputy Crabtree took a photograph of Mr. Ling in this degrading and emasculating position. (Deputy Crabtree Dep. p. 51).

31. Mr. Ling was taken from the intake room to the Campbell County Correction Center's decontamination and shower area. (Deputy Standridge Dep. pp. 36-37).

32. While in the shower area, Mr. Ling was calm. (Deputy Miller Dep. p. 46).

33. Deputies Miller and Standridge removed the spit mask from Mr. Ling's head and attempted to wash his face. (Deputy Miller Dep. p. 46).

34. When Corporal Brown saw that the spit mask had been removed, he became angry and ordered the spit mask to be put back on Mr. Ling's head. (Deputy Miller Dep. p. 46).

35. While the officers attempted to put the spit mask back on to Mr. Ling, Deputy Dakota Williams struck Mr. Ling three times in the lower back. (Deputy Miller Dep. pp. 46-47).

36. Corporal Brown ordered Mr. Ling to be placed alone in the negative pressure cell. (Corporal Brown Dep. p. 92).

37. Sheriff Goins testified that the only purpose for putting Mr. Ling in the negative pressure cell was for "punishment." (Sheriff Goins Dep. p. 117).

5

38. Mr. Ling was handcuffed from the time of his arrest until he was placed alone in the negative pressure cell. (Deputy Miller Dep. p. 49).

39. Mr. Ling was left alone in the negative pressure cell, still wearing the spit mask, and alternated between states of motionless to lying in the fetal position. (Deputy Standridge Dep. p. 40).

40. As Mr. Ling lay on the floor, he lost control of his bladder and urinated on himself. (Sheriff Goins Dep. p. 139).

41. Deputy Standridge would open the cell door from time to time, but he only checked to make sure that Mr. Ling was still breathing. (Deputy Standridge Dep. p. 40).

42. Mr. Ling was not provided with any medical care until approximately 7:14 a.m., when a nurse arrived at the facility. (Corporal Brown Dep. pp. 102-103).

43. No correctional officers or supervisors reported the incident involving Nathan Ling. (Sheriff Goins Dep. pp. 60-61).

44. Corporal Brown testified that he did not attempt to get the plaintiff medical care because he was not trained to do so, and he was not aware of a policy requiring it. (Brown Dep. pp. 60-62).

45. Upon hearing about the cruel beating that Mr. Ling endured, Justin Crabtree's supervisor Sargeant Owens sent Crabtree the following text message: "Fuck that guy. Play stupid gaems win stupid prizes. Welcome to TN!" (Sheriff Goins Dep. pp. 106-107).

46. Corporal Brown ordered deputies Miller and Standridge to make changes to their incident reports. (Deputy Miller Dep. pp. 63-68; Deputy Standridge Dep. p. 51).

47. Sheriff Goins testified that he believes the force used by Dakota Williams was justified. (Sheriff Goins Dep. p. 79).

48. Campbell County has recently included a duty to intervene section in their written policies and procedures. (Lt. Wasson Dep. pp. 59-60).

49. According to Plaintiff's expert Greg Winston, it is obvious that the lack of training led to Mr. Ling being severely beaten and his medical needs being ignored by numerous officers of the Campbell County Sheriff's Department. It should have been apparent to the sheriff as a policy maker that these results would follow, and his sworn testimony validates this conclusion. (Winston Affidavit ¶ 12).

50. Plaintiff's expert Greg Winston also concludes that the lack of medical assistance after 11 pm each night, and the failure of jail staff to attempt to summon emergency services for Mr. Ling indicates an indifferent attitude toward providing arrestees and inmates with necessary and constitutionally adequate medical assistance. (Winston Affidavit ¶ 11).

Respectfully submitted,

*/s/ Tony Seaton*
Tony Seaton, BPR #7279
Garza Law Firm
118 E. Watauga Ave.
Johnson City, TN 37601
Phone: (423) 282-1041
Fax:    (423) 282-0967
Email:  tseaton@garzalaw.com
Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of November, 2023, a copy of the foregoing was filed electronically using the Court's ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U. S. Mail. Parties may access this filing through the Court's electronic filing system.

*/s/ Tony Seaton*
Counsel for Plaintiff