# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE

**NATHAN LING,**

    Plaintiff,

v.                       Case Number: 3:20-cv-00233

**CAMPBELL COUNTY, GOVERNMENT, et al.,**

    Defendants.

---

**REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL AND/OR JUDGMENT NOTWITHSTANDING THE VERDICT AND/OR TO ALTER OR AMEND JUDGMENT**

---

Again, Plaintiff prevailed on one claim on claim only - that the county failed to train its staff to intervene to protect jail detainees from abuse by other staff.

Despite Plaintiff's repeated citation to Dr. Abel's testimony, Plaintiff submitted no facts detailing what event actually caused Plaintiff's alleged traumatic brain injury. That is important. The county's liability is adjudged based on what event resulted in Ling's injury. This is particularly true based on the theory that Ling prevailed on against the county.

Dr. Abel opined that <u>any</u> trauma properly investigated may have resulted in Ling's moderate traumatic brain injury. (Emphasis added) The choices from the record are clear: (1) Ling hitting his head on a pickup truck while fleeing from deputies lawfully attempting to detain him as a result of outstanding warrants in the State of Michigan; (2) Justin Crabtree's removal of Ling from his patrol vehicle; (3) Justin Crabtree allegedly slamming Ling against the wall of the sallyport; (something not seen on the video, and actually denied by Crabtree); (4) Justin Crabtree slamming Ling's head on the counter of the search trap; or (5) Justin Crabtree striking Ling in the face with his fist.

1

Case 3:20-cv-00233-CEA-JEM    Document 210    Filed 04/05/24    Page 1 of 10
PageID #: 2963

In this regard, Dr. Abel testified and it was presented to the jury:

Q. And you're not telling the jury what the actual cause of his injuries to his head were, are you?

A. I don't understand.

Q. I mean, you didn't investigate the situation?

A. I didn't personally see the blows to the head, if that's what you mean.

Q. Okay, let me ask you. Could this type of, these types of injuries to the head be caused by other traumas? \

A. Yeah, certainly.

Q. Okay. Like, if someone ran into a pickup truck and hit their head and was rendered unconscious, could that be a trauma that could lead to a traumatic brain injury?

A. I mean, you can hypothetically, with any, any trauma.

Abel deposition P. 24, l 18 – p. 25, l 10.

Why does it matter? Ling prevailed under a failure to intervene theory. Accordingly, it truly matters what incident Ling is relying on if one is to evaluate a "failure to intervene" injury. Of course, that is only part of the equation. Ling still has to submit facts which can support a finding that the county has *Monell* liability for his injury.

Thus, to prevail, Ling had to show by admissible facts under the standards applicable to the alleged constitutional violation and resulting injury he alleged that:

(1) Deputies/correction officers of Campbell County, Tennessee violated Section 1983 by not intervening, which not only violated Ling's federal constitutional rights but resulted in his claimed injury under settled Section 1983 principles; and

(2) the existence of *Monell* liability as defined by Section 1983 principles, as contained within the jury charge.

This Plaintiff cannot do. It is not enough to show, or make the sweeping claim that

the entire incident at the jail involving Justin Crabtree not only violated Section 1983, but <u>actually caused</u> Ling's claimed injury. (Emphasis added)

Yes, the county stipulated that the Plaintiff had set forth sufficient evidence that certain individual officers violated Ling's federal constitutional rights, but not the injury. Why? Because he did. Yet, not only was the particular constitutional violation not specified, no effort was put forth by Plaintiff showing what conduct resulted in the claimed injury. This is essential for recovering certain damages as a result of a Section 1983 violation. Again, under the very text of the statute, and case law construing the same, it is not enough to simply demonstrate a Section 1983 violation, and then sit back, and expect an award of damages which may or may not be connected to the federal constitutional violation.

Again, as stated previously, Plaintiff must first prove a federal constitutional violation, and then, to attach liability to the county, Plaintiff must prove the existence of *Monell* liability. Thus, two things must exist before a county, such as Campbell County, may be held liable in this action. Moreover, the federal constitutional violation must be related to the claimed *Monell* violation. In other words, not any federal constitutional violation will suffice. To attach liability to a county, at a minimum, a plaintiff must demonstrate by citing to cognizable facts in the record that a policy or custom of the county was the <u>moving force</u> behind the alleged violation of Plaintiff's federal constitutional rights. (Emphasis added)

Based on the jury's finding, the constitutional violation in this case was the failure to intervene. That is simply because on the verdict form the jury found liability against Campbell County, Tennessee based upon the failure to train its staff to intervene to protect jail detainees from abuse by other staff. The jury then awarded damages

predicated on the alleged existence of a traumatic brain injury to Mr. Ling.

Thus, in analyzing the jury's verdict, there must be proof that an employee of Campbell County, Tennessee, acting under color of law, violated Ling's federal constitutional right as a result of the hypothetical employee's failure to intervene to protect Ling from abuse by other staff. If no such facts exist under the settled principles of failure intervene liability under Section 1983, then the county is not liable. *City of Los Angeles v. Heller*, 475 U.S. 796, 798–99 (1986).

An officer may be liable for failure to intervene only when, "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Burgess v. Fischer,* 735 F.3d 462, 475 (6th Cir. 2013). (*See, also Grinnell v. City of Taylor, Michigan*, No. 21-2748, 2022 WL 2563391, at *6 (6th Cir. 2022)). Accordingly, one can readily see that in analyzing liability for an alleged failure to intervene, it matters what situation and/or circumstances one is analyzing, when attempting to determine an individual officer's liability. If no officer is liable for failure to intervene, then the county is likewise not liable because of the absence of a federal constitutional violation. In the instant case, no officer at the jail can be held liable for the failure to intervene under any of the circumstances.

As the jury charge indicates, just because an officer allegedly violates an individual's federal constitutional rights and the same results in injury, the county is not automatically liable.

Again, in this case, the jury found that the county was liable as a result of its alleged failure to train its staff to intervene to protect jail detainees from abuse by other staff. This claim cannot be analyzed or measured by information retention or whether "better or more

4
Case 3:20-cv-00233-CEA-JEM    Document 210    Filed 04/05/24    Page 4 of 10
PageID #: 2966

training" would have avoided the incident. The failure to train allegation is measured by inquiring if Campbell County completely disregarded its duty to train its officers with regard to an officer's duties to intervene to protect detainees from abuse. It is understood if an officer received some training on the constitutional subject matter - even training outside the workplace – that officer "does not present the same highly predictable constitutional danger." As the courts have consistently acknowledged, it is not assumed that correctional officers will always make correct decisions with regard to their duty to intervene. However, merely showing that additional training would have helped, or allegedly would have helped, the officers make these difficult decisions cannot establish municipal liability against Campbell County. *Harris v. City of Saginaw, Michigan*, 62 F.4th 1028, 1038 (6th Cir. 2023) (Citations omitted)

If Ling's injury was caused by anyone employed by the county, it was Justin Crabtree. Ling even said this in his deposition. Accordingly, the inquiry is whether any of the officers present during Ling's intake could have intervened in the alleged incidents of abuse caused by Crabtree.[1]

The video shows that the entire incident of which Ling predicates his claim of injury was a rapidly involving situation. As the video demonstrates, it did not take long for Ling to be removed from the vehicle by Mr. Crabtree, allegedly slammed against the wall of the sallyport, slammed on the countertop of the search trap, or punched in the nose by Mr. Crabtree.

Again, placing this in context. All that correctional staff were told was that a

---

[1] Of course, the Defendant is somewhat hampered by the fact that no effort was set forth by Plaintiff to demonstrate what actually caused Ling's injury. In other words, what incident of abuse (assuming it was not Ling's collision with the pickup truck) that caused Ling's injury. As detailed below, all of the relevant officers affirmed that they either did not observe abuse, have reason to know that excessive force would be or was being used, or had both the opportunity and means to prevent harm from occurring. (See testimony of Joshua Miller, pp. 648-670; Alex Standridge, pp. 52-68; Sean Brown, pp 364-396).

5

combative inmate was arriving at the facility. No other detail was provided. In other words, no officer had any knowledge of the resistance offered by Ling, either previously or presently, if Ling had ingested anything, or if Ling had any weapons or contraband on his person. Even Plaintiff's expert, Gregory Winston, admits these facts, and further details that no intervention could have occurred as Ling was being dragged from vehicle by Justin Crabtree. (Winston testimony, pp 602, 638-647) Winston confines his opinions to the sallyport wall, the countertop, and the punching by Justin Crabtree while Ling was on the ground of the search trap.

## THE SALLYPORT

The sallyport video fails to show Ling being "slammed" against the cinder block wall of the sallyport. Justin Crabtree denied the same, and no officer present in the sallyport observed the same and Ling was not there to testify otherwise. (Crabtree testimony, p. 50) Further, no facts were set forth by Plaintiff to show that this alleged incident was the cause of Ling's injury. No facts were set forth by Plaintiff to rebut the testimony of the officers that there was no opportunity to intervene in the sallyport.

## THE COUNTERTOP

Again, Plaintiff has set forth no facts that Mr. Crabtree's "slamming" of Ling against the countertop in the search trap was the cause of Ling's injury. The video shows that Crabtree pushed Ling from the sallyport all the way to the countertop, and no officer testified as to any fact which would have allowed them to intervene. Again, this incident seems to be a continuation of Crabtree pulling Ling from the vehicle and forcibly pushing Ling into the search trap area. Indeed, the video shows that Crabtree never let Ling go during this period of time.

## THE PUNCHING

It is undisputed and the video shows that Ling eventually ended up on the ground. Crabtree and Crabtree alone was in the facial area of Ling. The video shows, and Crabtree admitted, that Ling was struck in the nose 2 to 3 times in rapid succession. The only individual remotely close to Crabtree was Sean Brown. Mr. Brown claimed not to observe the punching by Crabtree. (Brown testimony, p. 384-385) Again, the punching was rapid and it is a giant logical leap to conclude that Brown could have intervened if in fact he had observed the same. No proof indicated that Crabtree announced that he was about punch Ling in the nose, and of course, Plaintiff set forth no facts that Crabtree's punching caused Ling's injury. Accordingly, it cannot be said that Brown violated Section 1983 by failing to intervene, nor can it be said than any other officer in the area violated Section 1983 by failing to intervene.

Accordingly, Plaintiff has failed to demonstrate the existence of a constitutional violation related to its claim against Campbell County and accordingly the action against the county should be dismissed. Yet, even if an appropriate constitutional violation and injury was shown by Plaintiff, the county still cannot be held liable under *Monell* theory.

As the charge indicates:

First, the plaintiff must show the municipality's training was inadequate for the task performed.

Second, the plaintiff must show that the municipality acted with deliberate indifference to the fact that its inadequate training would lead its agents to violate constitutional rights. To show this deliberate indifference, the plaintiff must prove that the violation of a clearly established right was a "known or obvious consequence" of lack of training. The plaintiff can prove deliberate indifference if the need for a certain type of training is sufficiently obvious. The failure to provide obviously needed training can properly be characterized as deliberate indifference to constitutional rights.

Third, a municipality's inadequate training must have actually caused plaintiff's injury. This means that proper training would have prevented the violation of the

plaintiff's constitutional rights, and the violation of plaintiff's constitutional rights were a foreseeable result of the inadequate training. For example, even if a municipal employee uses excessive force to harm a plaintiff, the plaintiff must still prove that proper training would have prevented this force and that the municipality could reasonably foresee that the employee's wrongful act would follow from the lack of training.

See jury charge at p. 20–21

Plaintiff's witness with regard to inadequate training was Gregory Winston. No doubt, Winston reviewed the deposition testimony, applicable documents, and of course the video. That is what he bases his conclusion. Yet, Winston's opinion falls within the *Harris v. City of Saginaw, Michigan's* prohibition that more or better training would have prohibited or prevented the incident. Accordingly, on this basis and this basis alone, Winston's opinion should be set aside.[2] Winston's testimony also fails to acknowledge the trial testimony of Lieutenant Mallory Campbell as Lieutenant Campbell was not deposed by Plaintiff.

Ms. Campbell detailed the training that she did offer which included not only classroom training but at least 2 weeks of on-the-job training. Lieutenant Campbell vehemently denied that this training did not include failure to intervene. (Campbell, p. 683-684) It simply wasn't called that. However, she obviously seriously took to heart this obligation and provided all of her correctional officers with this training. Lieutenant Campbell's testimony was not rebutted. Moreover, it matters not if Ling, or anyone else, desired to criticize Lieutenant Campbell or her training methodology. It only matters that it was provided. There was no deliberate indifference and as shown, no facts suggest that the training program of Ms. Campbell actually caused Ling to sustain any harm as argued

---

2   This in no way is meant to impugn Mr. Winston. Mr. Winston was, in the undersigned's opinion, a competent witness and had been in an optimal position for some period of time prior to his retirement to develop or theorize any training which could be conducted, no matter if the training would be followed.

by the Plaintiff and ultimately found by the jury.[3] (Campbell testimony, pp 678-699).

## CONCLUSION

For each and all of the foregoing reasons, it is respectfully requested that the jury's verdict be set aside, judgment entered for Campbell County, or in the alternative a new trial be ordered.

Respectfully submitted this 5th day of April, 2024.

TAYLOR & KNIGHT, GP

*/s/Arthur F. Knight, III*
Arthur F. Knight, III, BPR No. 016178
800 South Gay Street, Suite 600
Knoxville, Tennessee 37929
Phone: (865) 971-1701
Fax: (865) 971-1705
aknight@taylorknightlaw.com

---

[3] Candidly, even Plaintiff's expert, Gregory Winston, admitted that all you can do is train, the training itself does not mean a particular officer will follow the training, and he was totally unaware of any other incident like the Ling incident occurring in Campbell County. Although Plaintiff traveled on a single incident failure to train theory in this regard, the fact that the incident had never occurred previously or occurred subsequently, goes to the Court's admonition to the jury that the consequence of failing to train would be an obvious risk of harm to an arrestee.

## CERTIFICATE OF SERVICE

      I hereby certify that on April 5, 2024, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served via regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

                                        */s/ Arthur F. Knight, III*
                                        Arthur F. Knight, III