# GREG WINSTON

1   correct?
2   A.      Correct, to my understanding, yes.
3   Q.      And all of their findings to the district
4   attorney, as far as you're concerned, that was their
5   duty?
6   A.      That's generally what they do, yes.
7   Q.      And the district attorney decided who to charge
8   and what the sentence is to be?
9   A.      Yes.
10          MR. KNIGHT: That's all I have, Your Honor.
11  Thank you.
12          THE COURT: All right. Thank you.
13          MR. SEATON: That's all.
14          THE COURT: Thank you, sir.
15          MR. SEATON: Next witness is Joshua -- wait a
16  minute.
17          (Off-the-record discussion between
18          plaintiff's counsel.)
19          MR. SEATON: I'm sorry. Greg Winston.
20          THE COURT: Craig Winston? Greg Winston.
21          MR. SEATON: Yes, Greg Winston.
22          THE COURT: Yes.
23          (The witness was duly sworn.)
24                  GREG WINSTON,
25  called as a witness at the instance of the parties,

638
Winston - Cross-Examination

```
 1  BY MR. KNIGHT:
 2  Q.      Good afternoon, Mr. Winston.
 3  A.      Good afternoon, sir.
 4  Q.      You're familiar with TCI?
 5  A.      Yes, sir.
 6  Q.      And what TCI does, in addition to providing
 7  some training, they also inspect facilities; correct?
 8  A.      Yes, sir.
 9  Q.      And they note deficiencies and then give the
10  facility an opportunity to correct the deficiencies?
11  A.      Yes, sir.
12  Q.      And then whether or not they correct them, they
13  certify them; correct?
14  A.      Correct.
15  Q.      Are you aware of -- I mean, you've testified at
16  length here today about training and this, that, the
17  other.  You were a jail superintendent; correct?
18  A.      Yes, sir.
19  Q.      Hold any other positions -- you went through a
20  little bit too fast for me -- other than being a jail
21  superintendent supervising other employees?
22  A.      Yes, sir, I did.  I -- up to 400 at one time,
23  supervisors as well as, you know, line staff.
24  Q.      Is it fair to say, Mr. Winston, just because
25  you train someone or because it's written down somewhere
```

Case 3:20-cv-00233-CEA-JEM   Document 204   Filed 03/07/24   Page 638 of 699   PageID #: 2883
Case 3:20-cv-00233-CEA-JEM   Document 210-1   Filed 04/05/24   Page 3 of 9   PageID #: 2975

```
 1  that this is what you should do doesn't mean it's going
 2  to be done?
 3  A.      That's true.  That's fair.
 4  Q.      You have quite a bit of experience in
 5  corrections.  I believe we all can see that.
 6          An officer would have to have the ability to
 7  intervene.  Wouldn't you agree with me?
 8  A.      Yes, sir.
 9  Q.      And, I mean, you're -- you're from Virginia;
10  correct?
11  A.      Yes, sir.
12  Q.      And that's a different, I think, circuit,
13  but --
14  A.      Fourth.
15  Q.      Fourth Circuit?
16  A.      Yes.
17  Q.      We're in the Sixth Circuit.  The Sixth Circuit
18  indicates that if something is going on and it's less
19  than a few seconds, then there's no constitutional duty
20  imposed upon an individual officer to intervene --
21  A.      Okay.
22  Q.      -- because it's impossible.
23  A.      Right.
24  Q.      Does the Fourth Circuit have a similar rule?
25  A.      No.  In fact, it -- the Commonwealth of
```

1  Virginia just passed a couple of justice reform laws
2  that codified the requirement to train on intervention
3  and the obligation to intervene in times of excessive
4  use of force.
5  Q.    If I went over there and punched Mr. --
6        MR. SEATON: Smith.
7  BY MR. KNIGHT:
8  Q.    -- Smith in the face, could you intervene with
9  that?
10 A.    No, sir. I'd let the bailiff do that.
11 Q.    Yeah, that -- could the bailiff intervene?
12 Could he have stopped the punch?
13 A.    No, sir.
14       Not questioning your ability to intervene in
15 the fistfight, but --
16 Q.    Oh -- oh, I was getting to -- you had quite a
17 bit of experience in corrections. A lot of these
18 individuals are combative; correct?
19 A.    Yes, sir.
20 Q.    A lot of them spit at you; correct?
21 A.    Correct.
22 Q.    Cuss at you?
23 A.    Yes, sir.
24 Q.    Yell at you?
25 A.    Yes, sir.

```
 1   Q.      They don't want to be there?
 2   A.      That's right.
 3   Q.      And they'll do anything not to be there?
 4   A.      Correct.
 5   Q.      And a lot of times that -- when you're in
 6   corrections, you don't always know what went on at the
 7   arrest scene; correct?
 8   A.      Correct.
 9   Q.      You may just be notified that you have a
10   combative inmate coming in, and you don't know: One,
11   what that inmate -- what -- what that arrestee has done
12   or what that arrestee has ingested or what that arrestee
13   has hid or not hid or anything like that?
14   A.      Yes, sir.
15   Q.      Have you performed an audit of the statistics
16   of the arrestees coming in and out of the Campbell
17   County Jail?
18   A.      No, sir.
19   Q.      So when you say that it's obvious that
20   something like this is going to happen again, during the
21   administration of Mr. -- of Sheriff Goins, which -- he
22   was the sheriff in 2019 -- and subsequently with Sheriff
23   Barton, are you aware of any other type of incidents?
24   A.      No, sir.
25           MR. KNIGHT:  That's all I have.
```

1        Because these jail staff are aware that they've
2   got a combative person coming; right?
3   A.      I'm not exactly -- I'm not exactly sure what
4   the words were, how it was transmitted from dispatch.
5   But clearly by virtue of the fact they were waiting
6   inside the sally port, there was evidence that they were
7   suspicious of -- of what was coming in.
8   Q.      And it's reasonable that an officer who's been
9   involved in a pursuit and an arrest may be at a
10  different level of mindset than a jail staff who doesn't
11  know what's just happened?
12  A.      Correct.
13  Q.      And so there is a reasonably foreseeable --
14  it's foreseeable that that officer might be agitated?
15  A.      Frustrated, yes.
16  Q.      Because he's just had to be with this person
17  for however long it takes to get to the jail?
18  A.      I've witnessed it, yes, sir.
19  Q.      And so that's reasonable that the jail staff
20  anticipate that hey, the officer may be in an agitated
21  state as well as the detainee?
22  A.      And that's part of the training.
23  Q.      Thank you, sir.
24  A.      Yes, sir.
25                  RECROSS-EXAMINATION

```
 1  BY MR. KNIGHT:
 2  Q.        You're unaware of either of these jail
 3  individuals knowing anything about Mr. Ling; correct?
 4  A.        I'm sorry, sir.  Say that again?
 5  Q.        You're -- you're unaware of any -- either of
 6  these corrections officers knowing anything about
 7  Mr. Ling, what he had done, what he had ingested, what
 8  he had hid, or anything; correct?
 9  A.        No, sir.
10  Q.        Is it fair to say that arrestees are different
11  and react differently to different situations?
12  A.        Yes.
13  Q.        I mean, what may make one arrestee stop, say
14  hey, they're changing teams, I'm going to be okay and
15  another arrestee is going to say, hey, I'm going to keep
16  fighting?
17  A.        Right.
18  Q.        Thank you.
19  A.        Yes, sir.
20            THE COURT:  Thank you, sir.
21            THE WITNESS:  Yes, sir.  Thank you, Judge.
22            MR. SEATON:  Our -- our last witness is Joshua
23  Miller.
24            THE COURT: All right.  That's your final
25  witness?
```

```
 1              MR. SMITH:  Yes, Your Honor.
 2              (Off-the-record discussion between counsel.)
 3              MR. KNIGHT:  Your Honor, can we take a brief
 4   recess?
 5              THE COURT:  Okay.  How much --
 6              MR. KNIGHT:  I anticipate as a last witness he
 7   may take a little longer --
 8              THE COURT:  Okay.
 9              MR. KNIGHT:  -- and we may run into 4:00.
10              THE COURT:  Okay.
11              MR. KNIGHT:  I'm not sure.
12              THE COURT:  All right.  Let's take -- 10
13   minutes enough?  Let's take about 10 minutes, ladies and
14   gentlemen.
15              (Brief recess.)
16              (Subsequent proceedings were heard but
17              not requested to be transcribed herein.)
18              THE COURT:  Thank you all.  Please be seated.
19              All right.  Mr. Seaton, call your next witness.
20              MR. SEATON:  Joshua Miller, Your Honor.
21              THE COURT:  Okay.
22              (The witness was duly sworn.)
23                          JOSHUA MILLER,
24   called as a witness at the instance of the parties,
25   having been first duly sworn, was examined, and
```